We look anew this morning on the question of whether the Department of Commerce's determination that gas be to swivels and gas be to nuts, or either of them, are tight-fittings within the scope of this particular finding, and whether that's supported by substantial evidence. Let's first look at gas be to nuts. It's made of cast iron, we can see that. However, it's produced to a different ANSI standard than all fittings, all tight-fittings. And more importantly, it has the straight thread produced to the unified Gibbs screw thread standard gas be B-1-1. Being a straight thread, it cannot, in fact, seal by itself. More importantly, every pipe fitting has a thread that is through a thread twister. What do you mean it cannot seal by itself? Well, by really joining onto, in this particular case, the swivel, it's a smooth, there's perhaps yarns, but a pipe into a fitting in this house, you will feel that as you tighten the thing down, there's a sealed form. So it only can make with something that has the thread on it? It can only make with a specific thread. In this particular case, there are, as we have it in the record, if I have a gas meter, it will have two spuds or furrows, which will be the means whereby you're going to affix a gas meter nut. These threads, if produced by, say, a spray gas meter... You'd attach that to the meter? Yes, sir. And the pipe and the swivel would go into it? On page 66 of our joint appendix, you will see a typical gas meter. I was thinking about bringing the small one I have, but I'm sure I'd have trouble dealing with the screening device. But that nut would attach to the meter? Yes, sir. Only? Only to the meter. Only to the meter. Yes, sir. Now, if you took this very same nut and went anywhere within... And does the swivel attach to that nut? The swivel is used in conjunction with the nut. In other words, this is the typical configuration whereby if I had a gas meter, I'm pointing from up here, I would smooth the thread. So what you're saying is the nut facilitates joining the swivel to the meter? So far, so right. Okay, so no one contends in this case that the gas meter nut can connect directly to a pipe, right? The report below indicated that it wasn't necessary. It didn't have to connect to a fitting. I don't believe there's been anyone contesting this. They are. They defy logic and everything else. So no one has said that the gas meter nut, and maybe I'm wrong, this is where I need your help. No one has said the gas meter nut is by itself a pipe fitting, but I thought the CIT held rather the gas meter nut and the swivel taken together were a single unit and as such were a pipe fitting. The court below incorrectly held that the gas meter swivel and the gas meter nut were a unit and as such constituted a means whereby A was joined B to the meter. Now, I would point out, you can go into a facility that would sell a gas meter nut and buy a nut. You can go into a store that would sell or a facility that would sell a swivel and buy a swivel. In the old days, they measured the diameter of these by candlelight. This was, I understand, about approximately a 10 candlelight sized hood. I could have a hundred swivels. They would fit a spade meter, a Pittsburgh meter, etc. as a 10 candlelight. Mr. Evans, so I understand exactly. You demonstrated how the nut helps the swivel join the meter. The other end of the swivel would connect with what? The fitting generally. Again, if you look at page 68 of the appendix, you will see something that might be outside your house. It's a typical gas meter. This would go up. It would, in fact, screw into, and these are tapered threads to the national pipe standard, so it would fit into a fitting. And that fitting presumably could send the gas to various places of your house. Generally, Your Honor, it would be coming in from under the ground. It would go in and through a pipe, through a regulator, through a valve, through a gas cock, into this aperture, into the meter, out of the meter, and the meter would be doing the registering. But what's at the point where the gas leaves the meter and goes into the dwelling? You have a second... Into the rest of your house, I should say. You have a second swivel coming out. Again, more fittings, and then off to the house or the apartment. One question I want to ask you. The cases seem to say that you look at the language of the order, the anti-dumping order, and you then review that in light of the petition and the decision. Is that correct? Yes, Your Honor. But where in the attendance that we have is the actual petition? Because that, the cases, it seems that the part of, well, as I read the regulation, and our cases seem to say that one of the things you have to consider in one of these scope situations is the language of the anti-dumping petition, right? I don't have with me, and I certainly couldn't quote to you, Your Honor, the exact language. It was certain valuable pipe fittings from... No, I understand, but I'm just talking now about really sort of a housekeeping question. Where is the actual petition in the appendix, the two-line appendix that we have? I'm not sure, Your Honor, but I would be pleased to make sure it's available. I don't think it's been able to speak, but... We'd be glad to receive it. It's in the record of the Bureau of International Trade. Yes, Your Honor. I should point out that the International Trade Commission had a definition that pipe fittings are generally used for connecting bores of two or more pipes or tubes, connecting a pipe to some other apparatus, changing the direction of fluid flow, or closing a pipe. I submit, and it's uncontested, this particular article could do none of those... Well, what about the two of them taken together? Let's look at it. If we take these two together, it's going to affix to a gas meter in my right hand. Can this connect bores of two or more pipes together? No, of course not, but what about connecting the pipe to some other apparatus? Okay, where is the pipe? Coming in directly from above. Okay, the pipe will not connect to this. You gave a fitting in this context. Well, it's not what the CIT found. The CIT says it's unclear whether a gas meter spool can connect directly to a pipe. Well, we can submit that it can't, but let's assume that it's unclear. They have also taken a view that it's got to be clear because that's the only way they can shoehorn this into the definition of a pipe fitting. Now, there's something about the English language that accepts that anything that's a pipe fitting ought to be able to fit the pipe. This gas meter nut, which is a separate article of Congress, and quite frankly you could find that this is not a pipe fitting, and maybe this is. It would be a strange result. But these two aren't tied that they have to be between exactly the same. And these threads preclude this from being able in any context to fit to a pipe. So you're suggesting that because the CIT found that it's unclear, they didn't find that they could be connected to a pipe, that someone has not met their burden of proof showing these are in fact pipe fittings. I believe the court below stated incorrectly so that nothing requires that a pipe fitting directly connect to a pipe. Now, I would dispute that. I think that's a clear error. I think it's equal error to have concluded in the court below that these two are a unit. You don't buy it as a unit. You don't have to. You could have an entire supply of these in your van or car. And if you didn't have the right nut, you couldn't finish the job. You have to have a nut that hits the meter. Is it an issue? I gather that there has been no study of the sales of fair value for these particular items to be left in the swimming pool. Is that right? In the International Trade Commission, I believe that the eight items that they requested information on were elbows, tees, cupboards, perhaps unions. I can't remember the exact, but there were eight different items. Our client obviously has been caught in the middle of this because now substantial anti-dumping duties are being assessed. But if they weren't separately assessed, that's why we're here. Yes, Your Honor. To fit them into what's called the larger category. Yes, Your Honor. I mean, we're here because we got swept into a larger category of pipe fittings, which we would have these two particular articles of Congress. Pardon? Your Honor, as I understand, you argue that in this case, the Congress erred because it stopped the analysis of K-1, the rate at which you go to K-2. Because K-1 is not – you say K-1 for the reasons you've been arguing and others is not dispositive. That's right, Your Honor. We've determined that it's most ambiguous that you should go to K-2. But as to the gas holder nut, we don't think there's any evidence, not much since the end. We just don't think there's any evidence that that should be a pipe fitting. If you look at the four bases for the Congress Department's determination, they say they're made of cast iron. It's conceded. They're indisputably fittings because they're part of the piping system. So is a gas meter. So is a regulator. So is a valve. So is a cock. None of those is considered fittings. The key is whether these are pipe fittings. Exactly, Your Honor. They're un-malleable, acrylic iron, clearly from the PRC. Right. They can be connected to pipe fittings or pipes. This cannot be connected to a pipe fitting or pipe. And they're not groove fittings or compression couplings. A compression coupling has need for gaskets on two ends. I have behind me a sample. You simply can't take this and bolt it down to a gas meter and have it sealed. You have to put a gasket on here. And given the possibility, there's also insulation. So as a practical matter, post-importation, that same article in a different configuration would have a gasket and an insulator so that when you took the nut, put it over, and bolted it on to the meter, you would have a compressed seal. So let me agree with you that under K-1, the burden wasn't established and CIT got it wrong. Then the result, I imagine, that you're asking us for is a vacating remand for an assessment under K-2? Well, Your Honor, as to the gas meter nut, I would say there's no evidence. No matter what you look at, you'll never find evidence that this can be a pipe fitting. In response to Judge Brewer's question, I want to balance. I would demand, given the fact that the Congress Department did not factor in the K-2 analysis, we've gone through and there's rather extensive information that doing the K-2 analysis we prevailed, but that's perhaps for a different day. But our new thrust is that as to the gas meter nut, under no stretch of anybody's imagination could this ever be a pipe fitting. But you would agree, Mr. Offit, to the extent that it was determined the K-2 analysis was required either with respect to the nut or the fitting or both, that in the first instance, it should be Congress and not this Court to do it. Well, I wouldn't rule it out, but yes, Your Honor, I think the Congress is kind of the primary response. If you could just leave those exhibits. They're right there, fine, no problem. Just hand them to the deputy. You'll find photocopying these on page 26 and 28 of our brief. Well, they're still in the picture, but you can leave the afternoon with them, Mr. Neal. I'll leave them right here. Well, they're going to be right here, Your Honor, and I'll leave them there. If anything else is available, go right ahead. I'll reserve the balance of my time.  This may please the Court. If this Court determines that Congress's determination is not supported by substantial evidence, Congress must make the K-2 determination in the first instance. Congress has the administrative responsibility to make that determination, and this Court should not examine factual data that was placed on the record but not examined by Congress in the first instance. Mr. Allen would like us to do it, but I think he, in his heart, recognizes you're right on that. Thank you, Your Honor. But I just wanted to make clear, because in his initial brief, he does suggest that this Court should make that determination in the first instance, but that is the incorrect statement. Counsel, we review to see whether Congress's decision is supported by substantial evidence. For me, there's really no deference to the CIT's decision, or rather look to whether Congress's decision is supported by substantial evidence. So, in effect, our review of the CIT is de novo. If we were to instead, since the CIT agreed with Congress, give deference to the CIT above and beyond the de novo standard of review, could that make possibly a difference in this case? No, it should not make a difference. Well, let me phrase it like this. Say we're going to reverse. Say we don't think K-1 is necessarily met under the substantial evidence test. But if we were to instead say, well, it's not met under the substantial evidence, but it would give deference also to what CIT decides. Would that make a difference? Because we're giving more deference, not just substantial evidence, but substantial deference plus whatever deference we give to the CIT in addition. Hypothetically, yes, Your Honor. However, the standard is clear that this court reviews de novo. Right. But if we did have the ability, which we don't as a panel, of course, to change that, it could make a difference in this case. It could make a difference because then the court would be deferring to a determination made by the lower court. However, that's hypothetical. Okay. But I'd like to address certain suggestions made by the panel in this case, which are simply not the case. There's nothing in this scope order which requires pipe fittings attached directly to a pipe or do not attach to another pipe fitting. The question here that was brought up by Your Honors was, well, the meter nut connects to the swivel, but it doesn't connect to another pipe fitting. That's only if Your Honors find that the meter swivel is not a pipe fitting. If the meter swivel is a pipe fitting, then the meter nut necessarily attaches to a pipe fitting. So it doesn't matter if you… I might interrupt you in the middle of the sentence, but it does appear, at least from what we've seen, that the original questionnaire, the original investigation by Congress did not include these items, but was, in fact, directed to, let me call them traditional pipe fittings without prejudging, but to the extent that this nut and the attachment through the swivel to the meter were not part of the original investigation. That's not clear, Your Honor. They certainly were not… It's certainly not clear from the record. But from the record, I would have thought that if they were included, it would have been more clearly stated. That's correct, Your Honor. It's not clear from the record. However, as this Court recently held in TAC, and has repeatedly held, is the order which controls, not the original petition, not the original investigation. No, but the order is based on the petition. And I don't believe that anyone's saying that the order reported to go beyond the investigation. And personally, we don't have that. No, Your Honor. However, as Appellant's counsel demonstrated to you as he was up here, a compression fitting, which is specifically excluded from the order, the metal compression coupling is actually defined in the order and excluded, serves a similar purpose. And that was specifically excluded. But all the more reason, perhaps, to recognize that lines are being drawn. All the more reason to recognize that when these types of fittings were excluded, they were specifically excluded in the order because the language of the order does not exclude either swivels or meter nuts. Assuming they were before the investigators as part of the inquiry. Yes, Your Honor. Which we don't know. No. However, from all the information on the record, Commerce made a determination that these are, in fact, pipe fittings. It did not get to the K-2 analysis, but that is not what's at issue here. Commerce looked at all the evidence which was required to honor K-1, looked at the briefing of the parties, the petition, the order, the ITC investigation. And from all that information, it made a determination that these are, in fact, fittings. Even information submitted by appellants in this case lists these as gas fittings. Counsel, I understand that one of the pieces of evidence that was relied upon was the classification system under HTS. Is that right? That there are three numbers under HTS, 7307.19, and of course the numbers go on and on. And that there was some argument that, well, these products at issue are currently classified under these numbers, and that's a further argument that they are, in fact, pipe fittings. Yes, an argument was made by an appellant, arguing that these did not fall within this Harmonized Tariff Schedule listing. However, customs repeatedly found that these articles do fall within the Harmonized Tariff Schedule. Are gas meter accessories classified under those three codes? Gas meter accessories? I'm just trying to understand how broad those codes are. I'm sorry, I'm not aware of whether they are or they aren't. I'd be happy to submit something I'll review in an edition if you'd like. This is so interesting. I want to make one point. The original petition is part of the record, correct? Yes. It's not in our appendix, but it is part of the record. Yes, it's certainly part of the record, both before Commerce and before the lower court. So it's certainly something that the court could rely on. And if we would order the administrative record in this case, it would include all of the material. Well, if we were to order, quote, the record, close quote in this case, it would include both all of the material that was submitted to CIT as well as the material that was before Commerce, correct? Yes. In the typical case, it would be two CDs, one confidential, one public, and that would include all of the information submitted during these proceedings to Commerce, and that is what's filed with CIT. When we come up and then when we file resub to CIT, we attach appendices similar to what we did here that only consists of what we cite. So we'd see both what was before Commerce and what was before CIT. Those CDs would, if it was on CD, at that point, sometimes there are microfiches that will forward it. We'll talk about hard copies too. Typically, the only hard copies that would be in front of CIT are what's actually included in the appendices. What's filed with CIT by the Department of Commerce are the CDs themselves because it's tens of thousands of pages and we've done a lot of these investigations, so it's paperwork reduction purposes. Counsel, in the ITC report, it defines pipe fittings, right? It goes through this definition, the appellant, counsel for the appellant was explaining to us pipe fittings are generally used for connecting the bores of two or more pipes, connecting a pipe to some other apparatus, changing the direction of flow, or closing a pipe. Yes, ma'am. Okay, so if that's the definition, which aspect do you argue that the swivels fall within? First, not ignoring your question, but I'd like to point out that that order is not dispositive. It merely helps. But there's nothing in that order that requires that the pipe fitting connect directly to a pipe. It merely says connecting a pipe to some other apparatus. Clearly, in this case, the swivel and the nut act to connect gas piping to a gas meter. They don't touch directly, I concede that in art, but there's nothing in that order that requires them to actually be touching those pipes. Do you see that they don't directly connect to a pipe? I believe there's a possibility that a swivel, the threaded end of a swivel, could be screwed into certain pipes, although I'm not an expert in this. But the CIT did not find that they did connect to a pipe. They said it's unclear. So that wasn't a binding fact below that we have to give deference to, because they didn't find they connected to a pipe. No, and I don't believe commerce anywhere in this determination specifically said that they connect directly to a pipe. It said that they act to connect a piping system, some other apparatus, which is the gas meter in this case, to the piping system. So you're not alleging here today that they have to connect to— you're actually alleging that they don't have to connect to a pipe in order to be considered pipe fittings. That's correct, Your Honor. There's nothing either in the IGC report— So is the gas meter then a pipe fitting? It doesn't connect directly to a pipe. Is it a pipe fitting? No, it's an apparatus that the pipe fitting is acting to connect to the pipes. The gas meter is that apparatus that's called for in the IGC report. These other things that are used to go between the apparatus and the pipes themselves are pipe fittings. For these reasons, we ask that the Court affirm the determination of the report below and sustain commerce's final determination in this case. Thank you. I believe you were sharing your time with the jury. Should I bring it, or should we? Check it. Check it. All right. May it please the Court, Roger Shagrin on behalf of Appellee Intervenors Ward and Anvil. Let me start with the fact that the scope of this case is one of the easiest I've ever had. The scope, as the Court is well aware, it is commerce which decides the scope of the case, but they start with the petition. So while commerce in the end makes the final determination, they begin with the petition. I think you'll see here that they actually took the scope of the petition. They didn't make changes to it. Even though they're allowed to, they did not. So the scope here was very easy. The scope of this case covers malleable iron cast fittings. It excluded groove fittings and compression couplings. And both in the industry and in the customs service, there's never any question about whether any, about the clear differences between groove fittings, compression couplings, and other malleable cast fittings. Now, Appellant has said, you know, these products, he uses one that's bent. I have one that's a straight, and this is on page 40 of the appendix, a picture of a straight swivel and nut. He says, you know, these products, this one or this one, were never considered by the Department of Commerce or the International Trade Commission. That is completely wrong. That is not on the record of the scope proceeding, but that is on the record of the investigation. Why do I say that with absolute certainty as the litigator of the case below? That is because Commerce, when they send the questionnaire to the Chinese foundries and the Chinese exporters, says this is the scope of the product subject to this questionnaire. All malleable cast iron pipe fittings that you have sold to the United States in this six-month period between July and December 2002, as I remember it broadly, but not groove fittings and not compression couplings. Were there sales? Yes. The Chinese had been selling these products to the United States. Did they have to report them in their questionnaire responses as the basis of the less-than-fair-value margin determinations? Yes, they had to. Now let's turn to the ITC. The ITC says... Before we turn to the ITC, you then have to take the leap, if it is a leap, to say that the undumping order referred and included everything... Yes, without question. ...on which the data had been provided in response to the questionnaire. Is that clearly stated in the order? Yes. Well, the order, once again, the order, like the scope, the order says this order covers, with respect to each one of these foreign producers or exporters, at this stated margin, all malleable cast iron pipe fittings other than groove fittings or compression couplings. So that takes us back to what, in fact, is a pipe fitting. Exactly. It does. And the only question is, is this really a pipe fitting? Appellant says, no one would say this is a pipe fitting because of the way it attaches to the gas meter. Well, I have a lot of respect for the Customs Service. It's obviously not dispositive as to this court. We recognize this. But on almost a half a dozen occasions, appellant and other importers of these pipe fittings has gone to the Customs Service and said, because these meter swivels and nuts attach to the gas meter instead of to a pipe, you should call them a part of a gas meter. And to your question, Judge Moore, there is a separate HDS classification for gas meter parts. Is that a duty assessment? Yes, it has separate duties. It's a different duty? Yes. Well, no dumping duties. Although, to be honest, that's not dispositive. It is quite possible that if Customs agreed with appellant that these were parts of meters, they might be subject and they would be subject to a different normal U.S. tariff. But Congress could still tell the Customs Service that these are within the scope. And I believe they would tell them these are within the scope. Why? Because Congress would say, let's look at the clear language of the scope. This is made of malleable iron. It's a fitting. It's very similar. Here's a 10 light nut and here's other nuts. You can't, yes, the threading is different, but the scope... Fitting, but doesn't connect to a pipe. Fitting for something. No, it doesn't. And you know what? A lot of other fittings don't. Fittings that connect to your water heater may connect to a different fitting before they connect to your water heater. Not every fitting has to connect to a pipe. It is true that, in fact, while there's no use in the scope, I did want to point that out, this scope language is about chemistries, i.e. malleable iron. There's this thing called non-malleable or ductile. So there's some chemistries and the fact that they are fittings. But there's no use in the scope here. But it is pipe fittings. They are pipe fittings. Where in the record, Mr. Chairman, is there the best definition, just what one... I don't want to say steel, but that's a bad joke. But one, say a plumber, or someone who handles gas installation of gas meters and gas pipes. I guess that would be a plumber. How would that person define a pipe fitting? As anything that uses a gas meter? Is there anything in the record? No, we can look to. No, but I think in general you do have the general description of the whole industry in the ITC questionnaire. And there, as was referred to by the Department of Justice, by Mr. Solbergrand, they talked about the fact that all of these fittings are used in one way or another in gas piping systems. And that doesn't mean it has to attach to the pipe, but clearly they're part of systems. Now, why don't we assess the dumping duty on the gas meter? Because the gas meter is part of a piping system, but it's clearly not a fitting. So these are all fittings, and all these fittings are part of a gas system. And they're all made in the same places. Thank you. Thank you, Your Honors. And if you'd like, I can leave these for you as well. We would like to have everything, but we need to know if there's... if you need to label something. I have a little diagram that goes with that. And these are all part of the record. These are all part of the record. We brought the same... Mr. Howard's nodding that they are. They were also brought to the Court of International Trade. The Court had requested. I don't think they followed you to the Court of Appeals for the Federal Circuit, but Jim Barclay had requested that the parties bring samples to that hearing. By the way, Mr. Shaggart, does your tie represent a vessel? Yes, it is. It's supposed to be a sailboat. With this injury, I'm trying to think of lighter things than the idea of getting on a sailboat. I'm just trying to see what it is. It's very literal. Yes. Thank you, Your Honor. Thank you, Mr. Shaggart. Mr. Feldman? Might the Court remind me how much time I do have? Let's make it four minutes. Thank you very much. Mr. Shaggart raised a rather interesting thing. Questionnaires were sent asking for pipe fittings. People responded because in the industry, pipe fittings are recognized as such. We included a very large appendix. It's the first time I've ever had more than 10, 15 pages. If you or your clerks look in there, you will see exhibit upon exhibit of catalogs of pipe fittings. There's not a single swivel. There's not a single gas meter nut. There's a Google... I went into 1,790,000 entries for gas pipe fittings, or pipe fittings. I went through... I didn't go through the 1,700,000. I got so tired because I couldn't find anything with a gas meter swivel or a nut. Anyway, if you look at the record, in this particular case, we did, Your Honor, suggest that you make that decision. I have become a little wiser as I got a little older. But anyway, I did make that mistake. In terms of the three members of the Customs Service who could be covered by the scope of the order, our client imported these articles as gas meter accessories or parts, under 9028. The Customs Service said, no, we think they're within the ambit of pipe fittings. We challenge that. Customs affirmed the decision below. I can't get to court because if I get the entries liquidated, I'm out before you all. So I've been in this quandary. I'm trying to fight them on as many fronts as I can, but I can't get to the Customs Service until... Okay, you say in your reply, Bruce, you recognize, you say that those rulings are there, but you have to challenge them. But you think they're wrong. You can take it to court. I'm going to do it. They're wrong. Well, we talked about them. Mr. Silverbrand has talked about the fact, and mere fact, this is a very specialized item. I hold this well. Well, to be in the Customs Service and those things, you have to be a general purpose item. If you go through your house, through a business, you'll find gas, piping, fittings, all kinds. There are 86 pictured on one page of one exhibit. Comment that every one of those 86, a piece of pipe can fit into it, paper, thread, paper, thread, seal. Every one of them. Any fitting you can find in all the publications, in all the brochures, departments. Is it correct to say, Mr. Hammer, that one end of the swivel is always going to be attached to a meter? Oh, totally. Okay. Yes, sir. It's got nowhere to go. That's the only reason it's got to be. And the other end generally fits into a pipe. Into a fitting. Now, a fitting is the means whereby you could take two pieces of pipe, for example, with a couplet, you could join those together. So you're recommending there's something like these. Would you agree that these could be classified as fittings, but not pipe fittings? No. I don't know. I don't know what fitting means. Pipe. They can't fit the pipe. You have to be a pipe fitting. That's the order. Yeah. These are not pipe fittings, I argue. They're a fitting, perhaps, Your Honor. I don't know. Is it fitting to call them fittings? I don't know. But one thing I will point out, the record in this case was somewhat separate of a part of the record that Mr. Shagrin initiated. He filed a dubbing complaint, went through its entire litany. We filed a challenge to the scope, and Congress started to sort of identify it. That's not my question. Is Mr. Shagrin's dubbing complaint, his petition, part of the record in this case? It's not part of the technical record. I wanted to clarify that. You will find that the papers are still there. Because the petition is important to me. It would seem to be important to receive a petition because all of our cases make it clear that you have to examine the petition in connection with your determination as to what the order is. I'm putting it in your hands. You'll have it here very shortly. On appendix page 780, you'll find a copy of a statement which I believe thoroughly summarizes what the scope was of the petition. One last point, or two last points. One to clarify, there is, Your Honor, there's more on page, at page 10, which is a copy of Judge Barzilay's decision from below. It may be a statement of fact. I don't know. Although the swivel may not directly touch a pipe, there is nothing in the record of this case that would require that pipe fittings must directly connect to a pipe to be considered a pipe fitting. We disagree with that. We think that's clear, Your Honor. And again, if you take a look at the fittings, every one of them would take a pipe. You would cap it, put it on, et cetera. Last point in our reply brief, there was a statement made in the record below, and Mr. Chagrin, I believe, would have to acknowledge this is the correct statement. The best way to distinguish grooved products from threaded is that all grooved products require gaskets. We have in our scope, what we have in our scope is all products that don't require a gasket. The only way you can put a grooved system together is with a rubber gasket. So he's acknowledged that below, we're not a party, that was not any of it. So, Your Honor, any questions or otherwise? Thank you, Your Honor. As to the exhibits that we've asked you to leave, would each of you label or indicate which exhibits you provided, anything that we need to know about what they are, and who they're to be returned to, those that you've left us and those that Mr. Chagrin has left us so that we know what's what? Yes, Your Honor. So we could collaborate on that. Either, if Mr. DeHale isn't here, take him to the clerk's office and tell him that it's for us. Yes, Your Honor. The Honorable Court is adjourned until this afternoon, 2 p.m.